47 CCPA
**Application of J. HUNGERFORD SMITH CO.**

**Patent Appeal No. 6570.**

United States Court of Customs and Patent Appeals.
June 29, 1960.

Rich and Smith, JJ., dissented.

Harold E. Stonebraker, Rochester, N. Y., for appellant.

Clarence W. Moore, Washington, D. C., for Comr. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and WILLIAM H. KIRKPATRICK, Judge.[1]

O'CONNELL, pursuant to provisions of Section 294(d), Title 28 U.S.C.

WORLEY, Chief Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board of the United States Patent Office affirming the decision of the Examiner of Trademarks refusing appellant's application for registration of "Burgundy" for use on a soft drink syrup, on the principal register under the provisions of Section 2(f) of the Lanham Act, 15 U.S.C.A. § 1052(f).

Appellant originally sought registration without reference to Section 2(f). However, after repeated rejections by the examiner on the ground that "Burgundy" denotes a flavor designation and is therefore descriptive, appellant amended its application and sought registration under Section 2(f), and presented evidence purporting to show that the mark had become distinctive of its goods in commerce. That evidence was held by the examiner and the board to be insufficient.

The record shows that appellant began using the word "Burgundy" as a trademark for processed cherries in 1937, and in 1940 obtained Registration No. 376,687 for that mark as applied to "processed cherries preserved in syrup." Appellant claims to have used "Burgundy" as a trademark on flavoring syrup continuously since 1939, the syrup in question having been produced from "Burgundy" processed cherries.

In holding that "Burgundy" has not been shown to have become distinctive of appellant's flavoring syrup, the board relied primarily on the ground that appellant has not used the word on such goods as a trademark but only as a flavor designation. That conclusion appears to be borne out by the two specimens submitted with appellant's application. On both specimens "J. Hungerford Smith's" and "J H S" appear in the largest lettering. The first specimen bears in smaller letters additional words "Imitation Burgundy Cherry Syrup," while the second bears the words "Cream-Pak Brand 'Burgundy' Cherry Flavoring Syrup" with "Reg. U. S. Pat. Off." appearing beneath the quoted word "Burgundy."

Regarding the first specimen, use of the word "Imitation" makes it clear that "Burgundy" is not used in a trademark sense. Obviously the intended meaning is not that the syrup is an imitation of a trademarked product, but that it imitates the Burgundy cherry flavor.

On the second specimen, as above noted, the word "Burgundy" appears in quotations with the notation "Reg. U. S. Pat. Off." printed below. Since "Burgundy" has not been registered for syrup, the notation presumably refers to the registration of that word for cherries. The meaning, therefore, is that the syrup is made from appellant's "Burgundy" cherries. The word "Burgundy" therefore is not used as a trademark for the syrup but to identify a principal ingredient. Use of the words "Cream-Pak Brand" in addition to "J. Hungerford Smith's" serves as a further indication that "Burgundy" is not used in the sense of a trademark for the syrup.

We agree with the Patent Office that, so far as the record shows, appellant has not used "Burgundy" as a trademark for a soft drink syrup, but only as a flavor designation. It follows that registration was properly refused, and it is unnecessary to consider the further holding that "Burgundy" is descriptive of appellant's product and has not been shown to have acquired a secondary meaning.

The decision is affirmed.

Affirmed.

RICH, Judge (dissenting, with whom SMITH, Judge, joins).

While appellant's use of the word-mark "Burgundy" is not as unequivocal a trademark use as it could have been, nevertheless I cannot agree with the majority's conclusion that appellant has not made a trademark use of it on syrup or the conclusion that it has been used only as a flavor designation.

The label referred to by the majority as the "first specimen" is the weaker of the two alleged trademark uses. The

arrangement of the words on the label, all in the same size of block letters, is:

IMITATION
BURGUNDY CHERRY SYRUP

I do not see that the word "Imitation" makes anything clear except that the syrup contains imitation cherry flavoring rather than natural cherry juice. Many soft drink syrups are imitations, i. e. synthetic flavors, and the label simply announces that this is one of them. All it makes clear is that it isn't real cherry syrup.

The other words proclaim that this is "Burgundy Cherry Syrup." The majority says this means it "imitates the Burgundy cherry flavor." "Burgundy" is not the name of a cherry or of a flavor. It is a registered trademark owned by appellant for use on processed cherries. It is descriptive neither of them nor of cherry flavored syrup. My view as to the first specimen label is that although it does not cause "Burgundy" to stand out as clearly as a trademark as it might, the alleged word-mark thereon is not descriptive of the product, which is imitation cherry syrup, and hence it really is a trademark in the form in which used. If in place of "Burgundy" we had Sunset or North Pole or Vesuvius, I think there would be no question about it. I see no reason why "Burgundy" should fare worse. The idea has crept into this case that "Burgundy" has a descriptive significance. But so far as cherries are concerned it is a trademark and I cannot see how, when applied to syrup, it comes to "designate" a flavor.

As to the "second specimen" label, the case is clearer. "Burgundy" is in quotation marks and under it is the legend "Reg. U. S. Pat. Off." The goods desig- nation is "Cherry Flavoring Syrup" and "Burgundy" is set forth with all of the accouterments of a trademark. No mem- ber of the public could possibly avoid the thought that it was intended to be a trademark for the "Cherry Flavoring Syrup." The question here is one of the impression on the public. I find the majority's reasoning completely un- realistic.

The majority first points out that the registration notice, as a *legal* matter, necessarily refers to the registration for cherries. *But members of the public would not know that*, as we do. Not knowing, they would have no reason, as does the majority, for making an associa- tion with "Burgundy Cherries," about which they may never have heard, and "Reg. U. S. Pat. Off" would mean nothing more to them than the words "Trade Mark" which are often similarly used. The majority next points out that the label carries appellant's name, monogram, and another brand name, "Cream-Pak." Other trademarks on a label may or may not detract from trademark use, depend- ing on the overall impression created by the label. I do not think they detract here. I feel that the second specimen label is a clear trademark use.

On the issue of descriptiveness, which the majority did not reach, I am of the view that the evidence of descriptiveness relied on by the Patent Office has been overcome, not by proof of distinctiveness under Section 2(f) but by a showing that the third party uses relied on are actually infringements and that "Burgundy" does not describe a flavor. Section 2(f) is not properly involved in this case.

Believing that there has been a trade- mark use of "Burgundy" on syrup, I would reverse.